Jack Silver, Esq. SB #160575
JSilverEnvironmental@gmail.com
LAW OFFICE OF JACK SILVER
708 Gravenstein Hwy North. # 407
Sebastopol, CA 95472-2808
Tel. (707) 528-8175

David J. Weinsoff, Esq. SB #141372
david@weinsofflaw.com
LAW OFFICE OF DAVID J. WEINSOFF
138 Ridgeway Avenue
Fairfax, CA 94930
Tel. (415) 460-9760

Attorneys for Plaintiff
CALIFORNIA RIVER WATCH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RIVER WATCH, an IRC Section 501(c)(3), non-profit, public benefit Corporation,<br><br>Plaintiff,<br><br>v.<br><br>LAS GALLINAS VALLEY SANITARY DISTRICT, a Public Agency,<br><br>Defendant. | Case No.   3:22-cv-04800<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL PENALTIES, AND DECLARATORY RELIEF**<br>(Environmental – Clean Water Act<br>33 U.S.C. § 1251 *et seq*.) |

Plaintiff CALIFORNIA RIVER WATCH ("RIVER WATCH") hereby brings this civil action pursuant to the Federal Water Pollution Control Act, also known as the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq*.

**I.    INTRODUCTION**

1. This action is a citizen suit for injunctive relief, civil penalties, and remediation brought against defendant LAS GALLINAS VALLEY SANITARY DISTRICT ("LAS GALLINAS") for routinely violating an effluent standard or limitation in an order issued by the State (*see* CWA §§

505(a)(1)(A) and (B), 33 U.S.C. §§ 1365(a)(1)(A) and (B)), specifically NPDES Permit Nos. CA0037851 and CA0038873 (*see* CWA § 402, 33 U.S.C. § 1342).

2. On or about January 4, 2022, RIVER WATCH provided notice of LAS GALLINAS' violations of the CWA to the (1) Administrator of the United States Environmental Protection Agency ("EPA"), (2) EPA's Regional Administrator for Region Nine, (3) Executive Director of the State Water Resources Control Board ("State Board"), and (4) LAS GALLINAS as required by the CWA, 33 U.S.C. § 1365(b)(1)(A). A true and correct copy of RIVER WATCH's 60-Day Notice of Violations ("Notice") is attached as **EXHIBIT A** and incorporated by reference. LAS GALLINAS, the State Board, the Regional and National Administrators of EPA all received this Notice.

3. More than sixty days have passed since RIVER WATCH's Notice was served on LAS GALLINAS, the State Board, and the Regional and National EPA Administrators. RIVER WATCH is informed and believes, and thereupon alleges, that the EPA has not commenced or is diligently prosecuting a court action to redress the violations alleged in this Complaint.

## II. JURISDICTION and VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), and 33 U.S.C. § 1365(a) (CWA citizen suit jurisdiction). The relief requested is authorized pursuant to 28 U.S.C. §§ 2201-2202 (declaratory relief), 33 U.S.C. §§ 1319(b), 1365(a) (injunctive relief), and 33 U.S.C. §§ 1319(d), 1365(a) (civil penalties).

5. Venue is proper because LAS GALLINAS is located and the events or omissions giving rise to RIVER WATCH's claims occurred, in this District. 28 U.S.C. § 1391(b)(1),(2). Venue is also proper because LAS GALLINAS' CWA violations have occurred and are occurring within this District. 33 U.S.C. § 1365(c)(1).

## III. PARTIES

6. RIVER WATCH is now, and at all times relative to this Complaint was, an Internal Revenue Code § 501(c)(3) non-profit, public benefit Corporation organized under the laws of the State of California, with headquarters located in Sebastopol, California and mailing address of 290 S. Main Street, #817, Sebastopol, California 95472. The specific purpose of RIVER WATCH is to protect, enhance and help restore surface and groundwaters of California including coastal waters, rivers,

creeks, streams, wetlands, vernal pools, aquifers and associated environs, biota, flora and fauna, as well as to educate the public concerning environmental issues associated with these environs. Members of RIVER WATCH have interests in the waters and watersheds which are or may be adversely affected by LAS GALLINAS' discharges and violations of the CWA as alleged herein. Said members may use the effected waters and watershed areas for recreation, sports, fishing, swimming, hiking, photography, nature walks and/or the like.  Furthermore, the relief sought will redress the injury in fact, likelihood of future injury, and interference with the interests of said members. LAS GALLINAS' ongoing violations of the CWA will cause irreparable harm to members of RIVER WATCH for which they have no plain, speedy, or adequate remedy. The relief requested will redress the ongoing injury in fact to RIVER WATCH's members.

7.     RIVER WATCH is informed and believes, and on such information and belief alleges, that defendant LAS GALLINAS is now, and at all times relevant to this Complaint was, a public agency formed under the laws of the State of California, with administrative offices located at 101 Lucas Valley Road, Suite 300, San Rafael, California.

### IV.     FACTUAL ALLEGATIONS WHICH GIVE RISE TO CLAIMS

8.     RIVER WATCH incorporates by reference all the foregoing including **EXHIBIT A** as though the same were separately set forth herein.  RIVER WATCH takes this action to ensure compliance with the CWA, which regulates the discharge of pollutants into navigable waters.  The statute is structured in such a way that all discharges of pollutants are prohibited with the exception of enumerated statutory provisions. One such exception authorizes a discharger, who has been issued a permit pursuant to CWA § 402, 33 U.S.C. § 1342, to discharge designated pollutants at certain levels subject to certain conditions.  The effluent discharge standards or limitations specified in a National Pollutant Discharge Elimination System ("NPDES") permit define the scope of the authorized exception to the CWA § 301(a), 33 U.S.C. § 1311(a) prohibition, such that violation of a permit limit places a discharger in violation of the CWA.

9.     The CWA provides that authority to administer the NPDES permitting system in any given state or region can be delegated by the EPA to a state or to a regional regulatory agency, provided that the applicable state or regional regulatory scheme under which the local agency operates satisfies

certain criteria (*see* CWA § 402(b), 33 U.S.C. § 1342(b)). In California, the EPA has granted authorization to a state regulatory apparatus comprised of the State Water Resources Control Board and several subsidiary regional water quality control boards to issue NPDES permits. The entity responsible for issuing NPDES permits and otherwise regulating LAS GALLINAS' operations in the region at issue in this Complaint is the Regional Water Quality Control Board, San Francisco Bay Region ("RWQCB").

10. While delegating authority to administer the NPDES permitting system, the CWA provides that enforcement of permitting requirements under the statute relating to effluent standards or limitations imposed by the Regional Boards can be ensured by private parties acting under the citizen suit provision of the statute (*see* CWA § 505, 33 U.S.C. § 1365). RIVER WATCH is exercising such citizen enforcement to enforce compliance by LAS GALLINAS with the CWA.

11. RIVER WATCH has identified discharges of sewage from LAS GALLINAS' sewage collection system to waters of the United States in violation of CWA § 301(a), 33 U.S.C. 1311(a), which states in relevant part, "Except as in compliance with this section and sections 302, 306, 307, 318, 402, and 404 of this Act [33 U.S.C. §§ 1312, 1316, 1317, 1328, 1342, 1344], the discharge of any pollutant by any person shall be unlawful."

12. RIVER WATCH has also identified numerous violations of orders issued by the State with respect to a standard or limitation (*see* CWA §505(a), 33 U.S.C. § 1365(a)), as set forth in Paragraph 13 below. RIVER WATCH contends that from January 4, 2017 through the present, LAS GALLINAS has violated the Act and these orders as described in the Notice. The location or locations of the various violations alleged in the Notice are identified in records created and/or maintained by or for LAS GALLINAS which relate to the ownership and operation of the sewer collection system and outfalls as described in the Notice. RIVER WATCH contends these violations are continuing or have a likelihood of occurring in the future.

13. RIVER WATCH contends LAS GALLINAS has violated the Act as described in the Notice. RIVER WATCH contends these violations are continuing or have a likelihood of occurring in the future.

A. <u>COLLECTION SYSEM SURFACE DISCHARGES CAUSED BY SANITARY SEWER OVERFLOWS</u>

Sanitary Sewer Overflows ("SSOs"), in which untreated sewage is discharged above ground from LAS GALLINAS' sewer collection system prior to reaching its wastewater treatment plant, are alleged to have occurred both on the dates identified in California Integrated Water Quality System ("CIWQS") Interactive Public SSO Reports and on dates when no reports were filed by LAS GALLINAS, all in violation of the CWA.

Numerous causes for SSOs include stormwater inflow and/or groundwater infiltration (I/I), defects in the sewer lines, root intrusion, and blockages due to grease and rags.  Currently, LAS GALLINAS' sewer collection system has insufficient capacity to handle peak wet weather flows. During heavy storms, the system becomes surcharged and untreated sewage overflows at various locations, eventually draining to Gallinas Creek, San Pablo Bay, and ultimately San Francisco Bay - all waters of the United States. These SSOs impact the water quality and beneficial uses of these waters.  Possible adverse effects on water quality and beneficial uses as a result of SSOs include the following:

- Adverse impacts to fish and aquatic biota caused by bio-solids deposition, oil and grease, and toxic pollutants common in sewage (such as heavy metals, pesticides, personal care products, and pharmaceuticals).

- Creation of a localized toxic environment in the water column as the result of the discharge of oxygen-demanding pollutants that lower dissolved oxygen, and elevated ammonia concentration which is a fish toxicant

- Impairment of water contact recreation and non-contact water recreation and harm to fish and wildlife as a result of elevated bacteria levels including pathogens.

A review of LAS GALLINAS' CIWQS <u>Spill Public Report – Summary Page</u> identifies the "Total Number of SSO locations" as **52**, with **101,544** "Total Vol. of SSOs (gal)" discharged into the environment. Of this total volume, LAS GALLINAS admits at least **52,665** gallons, or **51%** of the total, reached a surface water. A review of LAS GALLINAS' records indicates an even greater percentage of SSOs reached a drainage to a surface water or a surface water itself.  Of the 101,544 gallons of sewage spilled, only **42,405** gallons were reported as being recovered. The remaining

volume was discharged into the environment posing both a nuisance pursuant to Calif. Water Code § 13050(m), and an imminent and substantial endangerment to public health and the environment.

LAS GALLINAS' CIWQS <u>SSO Public Report – Detail Page</u> specifically identifies at least 51% of recent SSOs reported as having reached a water of the United States. Of significant concern is the volume of spill in a number of these events:

- October 24, 2021 (Event ID # 877106) – an SSO estimated at 500 gallons occurred at the "intersection of Manuel T. Frietas and Gallinas Avenue" (Coordinates 38.00956 -122.54899). The reported cause was "Rainfall Exceeded Design, I and I (Separate CS Only)." All 500 gallons were reported as reaching Gallinas Creek.

- October 24, 2021 (Event ID# 877101) – an SSO estimated at 3,475 gallons occurred at 36 Elena Circle (Coordinates 38.00891 -122.54981). The reported cause was "Rainfall Exceeded Design, I and I (Separate CS Only)." All 3,475 gallons were reported as reaching Gallinas Creek.

- February 26-March 26, 2019 (Event ID # 856639) – an SSO estimated at 29,000 gallons occurred at 3815 Redwood Highway (Coordinates 37.99877 -122.5362) as a result of "Rainfall Exceeded Design, I and I (Separate CS Only)." All 29,000 gallons were reported as reaching the South Fork of Gallinas Creek.

All of the above-identified discharges are violations of CWA § 301(a), 33 U.S.C. § 1311(a), as discharges of a pollutant (sewage) from a point source (sewer collection system) to a water of the United States without complying with any other sections of the Act. These alleged discharges are further violations of section III. *Discharge Prohibitions*, of LAS GALLINAS' NPDES Permit, which states in pertinent part:

> "C.    Bypass of untreated or partially-treated wastewater to waters of the United States is prohibited, except as provided for in Attachment D section I.G. of this Order…
>
> E.    Any sanitary sewer overflow that results in a discharge of untreated or partially-treated wastewater to waters of the United States is prohibited."

In addition, LAS GALLINAS' NPDES Permit, Attachment G – *Regional Standard Provisions, and Monitoring and Reporting Requirements (Supplement to Attachment D)*, provides at sub-section I.I.1.:

> "Neither the treatment nor the discharge of pollutants shall create pollution, contamination, or nuisance as defined by California Water Code section 13050."

B. <u>INADEQUATE REPORTING OF DISCHARGES</u>

Full and complete reporting of SSOs is essential to gauging their impact to public health and the environment. LAS GALLINAS' SSO Reports, which should reveal critical details about each of these SSOs, lack responses to specific questions that would identify the causes and the potential repairs ensuring these violations would not recur.

In addition, RIVER WATCH's expert believes many of the SSOs reported by LAS GALLINAS as partially reaching a surface water did so in greater volume than stated. RIVER WATCH's expert also believes that a careful reading of the time when LAS GALLINAS received notification of an SSO, the time of its response, and the time at which the SSO ended, too often appear as unlikely estimations. For <u>example</u>:

- October 24, 2021 (Event ID # 877106) – The estimated spill start time, agency notification, and operator arrival time are all reported as having occurred at 3:50 pm. The estimated spill end time is reported as 5:30 pm. The total spill volume of 500 gallons is reported as impacting Gallinas Creek.

- October 24, 2021 (Event ID # 877101) – The estimated spill start time, agency notification, and operator arrival time are all reported as having occurred at 3:13 pm. The estimated spill end time is reported as 5:32 pm. The total spill volume of 3,475 gallons is reported as impacting Gallinas Creek.

- February 26-March 26, 2019 (Event ID # 856639) – The spill is reported as beginning on February 26, 2019, with an estimated spill start time as reported as 6:24 pm. Both the estimated notification time and operator arrival time are reported as 6:57 pm. The estimated spill end time was reported as 11:31 pm on March 26, 2019. The total spill volume of 29,000 gallons is reported as impacting Gallinas Creek.

Given the unlikely accuracy of the times and intervals provided in these reports, it is difficult to consider the stated volumes as accurate. Without accurately reporting the spill start and end time, there is a danger that the duration and volume of a spill will be underestimated.

C. <u>FAILURE TO WARN</u>

LAS GALLINAS' NPDES Permit, Attachment G – *Regional Standard Provisions, and Monitoring and Reporting Requirements (Supplement to Attachment D)*, provides at sub-section I.I.2:

> "Collection, treatment, storage, and disposal systems shall be operated in a manner that precludes public contact with wastewater. If public contact with wastewater could reasonably occur on public property, warning signs shall be posted."

RIVER WATCH alleges LAS GALLINAS is understating the significance of the impacts of its CWA violations by failing to post health warning signs for discharges reaching a surface water. For example, despite the obvious risk to health, LAS GALLINAS did not post any warning signs to warn the public of the large spills detailed in Event ID #s 865629, 877101, and 877106.

D. <u>FAILURE TO MITIGATE IMPACTS</u>

LAS GALLINAS' NPDES Permit, Attachment D – *Standard Provisions*, provides at sub-section I.C.:

> "C. Duty to Mitigate. The Discharger shall take all reasonable steps to minimize or prevent any discharge in violation of this Order that has a reasonable likelihood of adversely affecting human health or the environment. (40 C.F.R. § 122.41(d).)"

RIVER WATCH alleges LAS GALLINAS is failing to adequately mitigate the impacts of its SSOs. In addition to the requirements under its NPDES Permit, LAS GALLINAS is subject to the requirements of the *Statewide General Requirements for Sanitary Sewer Systems, Waste Discharge Requirements*, Order No. 2006-0003-DWQ ("Statewide WDR") governing the operation of sanitary sewer systems. The Statewide WDR requires LAS GALLINAS to take all feasible steps, and perform necessary remedial actions, following the occurrence of an SSO including limiting the volume of waste discharged, terminating the discharge, and recovering as much of the wastewater as possible. Further remedial actions include intercepting and re-routing of wastewater flows, vacuum truck recovery of the SSO, cleanup of debris at the site, and modification of the collection system to prevent further SSOs at the site.

A critical remedial measure is the performance of adequate sampling to determine the nature and the impact of the release. As LAS GALLINAS is severely underestimating SSOs which reach surface waters, RIVER WATCH contends LAS GALLINAS is conducting inadequate sampling on most SSOs. For example, no sampling was conducted on Event ID #s 856639, 865629 877101, and 877106 which are reported by LAS GALLINAS as having reached a surface water.

The EPA's "*Report to Congress on the Impacts and Control of CSOs and SSOs*" (EPA 833-R-04-001) identifies SSOs as a major source of microbial pathogens and oxygen depleting substances. RIVER WATCH finds no record of LAS GALLINAS performing any analysis of the impact of its

SSOs on aquatic or wildlife habitat, nor any evaluation of the measures needed to restore water bodies designated as habitat from the impacts of SSOs.

E. <u>COLLECTION SYSTEM SUBSURFACE DISCHARGES</u>

It is a well-established fact that exfiltration caused by pipeline cracks and other structural defects in a sewer collection system result in discharges to adjacent surface waters via underground hydrological connections. RIVER WATCH alleges untreated sewage is discharged from cracks, displaced joints, eroded segments, etc., in LAS GALLINAS' sewer collection system into groundwater hydrologically connected to surface waters including, but not limited to, Gallinas Creek, San Pablo Bay and San Francisco Bay – all waters of the United States. Surface waters become contaminated with pollutants including human pathogens. Chronic failures in the sewer collection system pose a substantial threat to public health.

Studies tracing human markers specific to the human digestive system in surface waters adjacent to defective sewer lines in other systems have verified the contamination of the adjacent waters with untreated sewage. Evidence of exfiltration can also be supported by reviewing mass balance data, I/I data, video inspection, as well as tests of waterways adjacent to sewer lines for nutrients, human pathogens and other human markers such as caffeine. Any exfiltration found is a violation of LAS GALLINAS' NPDES Permit and therefore a violation of the CWA.

F. <u>VIOLATION OF RECEIVING WATER LIMITATIONS AND IMPACTS TO BENEFICIAL USES</u>

RIVER WATCH is understandably concerned as to the effects of both surface and underground SSOs on critical habitat in and around the diverse and sensitive ecosystem of LAS GALLINAS' wastewater treatment plant. Although Gallinas Creek is not identified under LAS GALLINAS' NPDES Permit, the Basin Plan for the San Francisco Bay Region lists the beneficial uses of Gallinas Creek, which include estuarine habitat, preservation of rare and endangered species, water contact recreation, non-contact water recreation, fish spawning, and wildlife habitat.

Discharges in excess of receiving water and groundwater limitations reaching these waters cause prohibited pollution by unreasonably affecting their beneficial uses. In order to protect these beneficial uses, LAS GALLINAS is required by its NPDES Permit to ensure that discharges shall not

cause the listed limitations to be exceeded (section V. *Receiving Water Limitations*). RIVER WATCH finds insufficient information in the public record demonstrating LAS GALLINAS has monitored for and complied with these receiving water standards.

F. <u>VIOLATIONS OF EFFLUENT LIMITATIONS AND DISCHARGE SPECIFICATIONS</u>

1. RIVER WATCH's review of LAS GALLINAS' CIWQS <u>Party at-a-Glance Report</u> identifies the following violations of effluent limitations imposed under NPDES Permit section IV. *Effluent Limitations and Discharge Prohibitions,* sub-section A.1, which provides:

> "1. **Wet Season**. From November 1 through April 30, the Discharger shall comply with the following effluent limitations at Discharge Point Nos. 001, and 002, with compliance measured at Monitoring Locations EFF-001 and EFF-001B, as described in the MRP:"

- November 30, 2021 (Event ID# 1098160) - "Cyanide, Total (as CN) Monthly Average (Mean) limit is 6.4 ug/L and reported value was 7.5 ug/L at EFF-001."

- December 03, 2019 (Event ID# 1069899) - "Chlorine, Total Residual Instantaneous Maximum limit is 0 mg/L and reported value was 4.92 mg/L at EFF-001."

- November 30, 2019 (Event ID# 1068526) - "Chlorine, Total Residual Daily Maximum limit is 0 mg/L is 0 mg/L and reported value was 4.92 mg/L at EFF-001."

- November 29, 2019 (Event ID# 1068525) - "Chlorine, Total Residual Daily Maximum limit is 0 mg/L is 0 mg/L and reported value was 4.92 mg/L at EFF-001."

- February 14, 2019 (Event ID# 1057244) - "Chlorine, Total Residual Daily Maximum limit is 0 mg/L and reported value was 4.57 mg/L at EFF-001."

- April 1, 2017 (Event ID# 1024996) - "Chlorine, Total Residual Daily Maximum limit is 0 mg/L is 0 mg/L and reported value was 0.19 mg/L at EFF-001."

- March 8, 2017 (Event ID# 1023278) - "pH Monthly Maximum limit is 9.0 SU and reported value was 9.56 SU."

- February 1, 2017 (Event ID# 1022437) - "pH Monthly Average (Mean) limit is 9.0 SU and reported value was 9.44 SU."

2. RIVER WATCH's review of LAS GALLINAS' CIWQS <u>Party at-a-Glance Report</u> identifies the following violations of effluent limitations imposed under NPDES Permit section IV. *Effluent Limitations and Discharge Prohibitions,* sub-section A.2, which provides:

> "2. **Dry Season**. From May 1 through October 31, the Discharger shall comply with the following effluent limitations at Discharge point Nos. 001, and 002, with compliance measured at Monitoring Locations EFF-001 and EFF-001B, as described in the MRP":

- October 25, 2021 (Event ID# 1097277) – Chlorine, Total Residual Instantaneous Maximum limit is 0 mg/L and reported value was 3.24 mg/L at EFF-001.

- October 25, 2021 (Event ID# 1097276) – Total Suspended Solids (TSS) Maximum Daily (MDEL) limit is 20 mg/L and reported value was 72 mg/L at EFF-001B (Blending).

- October 25, 2021 (Event ID# 1097275) - Total Suspended Solids (TSS) Monthly Average limit is 15 mg/L and reported value was 18.3 mg/L at EFF-001B (Blending).

- October 25, 2021(Event ID# 1097274) - Total Suspended Solids (TSS) Weekly Average (Mean) limit is 18 mg/L and reported value was 23.6 mg/L at EFF-001B (Blending).

- October 25, 2021 (Event ID# 1097273) - Copper, Total Recoverable Monthly Average limit is 8.6 ug/L and reported value was 14.4 ug/L at EFF-001B (Blending).

- October 25, 2021 (Event ID# 1097272) - Copper, Total Recoverable Maximum Daily (MDEL) limit is 11 ug/L and reported value was 21 ug/L at EFF-001B (Blending).

- May 19, 2019 (Event ID# 1059983) - Total Suspended Solids (TSS) Maximum Daily (MDEL) limit is 20 mg/L and reported value was 22 mg/L at EFF-001B (Blending).

- January 7, 2019 (Event ID# 1056312) - Copper, Total Recoverable Maximum Daily (MDEL) limit is 11 ug/L and reported value was 13 ug/L at EFF-001B (Blending).

- November 7, 2018 (Event ID# 1054152) - Copper, Total Recoverable Maximum Daily (MDEL) limit is 11 % and reported value was 12 % at EFF-001.

- December 13, 2017 (Event ID# 1038219) - Copper, Total Recoverable Monthly Average limit is 8.6 % and reported value was 9.4 % at EFF-001.

- December 7, 2016 (Event ID# 1018504) - pH Instantaneous Maximum limit is 9.0 SU and reported value was 9.28 SU.

3. RIVER WATCH's review of LAS GALLINAS' CIWQS Party at-a-Glance Report identifies the following violation of effluent limitations imposed under NPDES Permit section IV. *Effluent Limitations and Discharge Specifications*, sub-section B which provides:

> "B. **Percent Removal.** The average monthly percent removal of… total suspended solids (TSS) at all discharge points shall not be less than 85 percent (i.e., in each calendar month, the arithmetic mean of… TSS, by concentration, of effluent samples collected at Monitoring Location EFF-001 as described in the MRP, shall not exceed 15 percent of the arithmetic mean of… TSS, by concentration, of influent samples collected at Monitoring Location INF-001 as described in the MRP). For a calendar month in which the Discharger discharges blended effluent at Discharge Point No. 001, the… TSS monthly arithmetic mean and percent removal shall include results of blended effluent samples collected at Monitoring Location EFF-001B flow-weighted with effluent samples collected at Monitoring Location EFF-001".

- February 28, 2019 (Event ID# 1057243) - "Total Suspended Solids (TSS), Percent Removal Monthly Average (Mean) limit is 85% and reported value was 82.1% at EFF-001."

RIVER WATCH acknowledges that Event Id #s 1024996, 1038219, 1054152, 1056312, 1057243, 1057244 and 1059983 identified in this Complaint and in the Notice are subject to Administrative Civil Liability Complaint Order No. R2-2020-1015.

4.     RIVER WATCH's review of LAS GALLINAS' CIWQS Party at-a-Glance Report identifies the following violations of effluent limitations imposed under NPDES Permit section IV. *Effluent Limitations and Discharge Specifications*, sub-section C.2 which provides:

> "No more than 10 percent of all enterococcus bacteria samples collected in a calendar month shall exceed 110 CFU/100 mL".

- November 30, 2021 (Event ID# 1098159) - "Enterococci Monthly 90th% limit is 110 MPN/100 mL and reported value was 2419.6 MPN/100 mL at EFF-001."
- October 14, 2021 (Event ID# 1097278) - "Enterococci Monthly 90th% limit is 110 MPN/100 mL and reported value was 2419.6 MPN/100 mL at EFF-001B (Blending)."
- January 27, 2021 (Event ID# 1086571) - "Enterococci Monthly 90% limit is 110 MPN/100 mL and reported value was 2419.6 MPN/100 mL at EFF-001B (Blending)."

G.  MONITORING AND REPORTING PROGRAM VIOLATIONS

1.   Failure to Submit Self-Monitoring Reports

Specific requirements for the submission of a discharger's monthly and annual Self-Monitoring Reports (SMRs) are set out in NPDES Permit Attachment E - *Monitoring and Reporting Requirement Program (MRP)* at sub-section VIII.B *Self-Monitoring Reports (SMRs)*.

RIVER WATCH is unable to identify any monthly SMRs, including Annual Reports, on the CIWQS database, as required by LAS GALLINAS' NPDES Permit.

2.   Inaccurate Reporting

RIVER WATCH contends LAS GALLINAS is not accurately basing the sample results to the limitations stated under its NPDES Permit. In order to determine compliance, LAS GALLINAS must accurately report the sampling results taken by comparing the results to the limitations provided under section IV. *Effluent Limitations and Discharge Specifications*.

Attachment D. *Standard Provisions*, section III. *Standard Provisions - Monitoring*, states:

"A. Samples and measurements taken for the purpose of monitoring shall representative of the monitored activity. (40 C.F.R. § 122.41(j)(1).)

"B.2. ... In the case of pollutants or pollutant parameters for which there are no approved methods under 40 C.F.R. part 136 or otherwise required under 40 C.F.R. chapter 1, subchapter N, monitoring must be conducted according to a test procedure specified in this Order for such pollutants or pollutant parameters. (40 C.F.R. §§ 122.21(e)(3), 122.41(j)(4), 122.44(i)(1)(iv).)"

Attachment E. *Monitoring and Reporting Program (MRP)*, section I. "*General Monitoring Provisions,*" states:

"A. The Discharger shall comply with this MRP… If any discrepancies exist between this MRP and the 'Regional Standard Provisions, and Monitoring and Reporting Requirements Supplement to Attachment D) for NPDES Wastewater Discharge Permits' (Attachment G), this MRP shall prevail.

B. The Discharger shall conduct all monitoring in accordance with Attachment D, section III, as supplemented by Attachment G. Equivalent test methods must be more sensitive than those specified in 40 C.F.R. section 136 and must be specified in this permit."

Attachment E. *Monitoring and Reporting Program (MRP)*, section VIII.A. *General Monitoring and Reporting Requirements*, states:

"The Discharger shall comply with all Standard Provisions (Attachments D and G) related to monitoring, reporting, and recordkeeping."

An analysis of LAS GALLINAS' SMRs reported violations identifies the following:

**Copper** - Event ID #s 1054152 and 1038219. LAS GALLINAS reported the Average Monthly Limit for Copper as 8.6 % and the Maximum Daily Limit as 11%. However, the correct limits for copper are determined in ug/L not in percentage limitations. *See* NPDES Permit, section IV.A.

**pH** - Event ID #s 1023278 and 1022437. LAS GALLINAS reported the pH Monthly Maximum limit as 9.0 SU. However, the correct limit is 8.5 SU. *See* NPDES Permit, section IV.A.

**Enterococcus** - Event ID #s 1097278, 1086571, and 1098159. LAS GALLINAS reported the Enterococci Monthly 90% limit as 110 MPN/100 mL. NPDES Permit, section IV.C.2 states, "No more than 10 percent of all enterococcus bacteria samples collected in a calendar month shall exceed 110 CFU/100 mL."

RIVER WATCH contends that without a proper analysis and reporting of the results taken by LAS GALLINAS, it is likely that LAS GALLINAS is not reporting the results correctly which is crucial to a determination of whether it is in compliance with the strict terms of its NPDES Permit.

//

## V. STATUTORY AND REGULATORY BACKGROUND

14. CWA § 301(a), 33 U.S.C. § 1311(a), prohibits discharges of pollutants or activities not authorized by, or in violation of, an effluent standard or limitation or an order issued by the EPA or a State with respect to such a standard or limitation including a NPDES permit issued pursuant to CWA § 402, 33 U.S.C. § 1342. Additional sets of regulations are set forth in the Basin Plan, California Toxics Rule, the Code of Federal Regulations, and other regulations promulgated by the EPA and the State Water Resources Control Board. Sewage is specifically identified in the CWA as a pollutant. The sewer lines and storm water system owned by LAS GALLINAS are point sources under the CWA.

15. The affected waterways detailed in this Complaint and in the Notice are navigable waters of the United States within the meaning of CWA § 502(7), 33 U.S.C. § 1362(7).

16. The Administrator of the EPA has authorized Regional Water Quality Control Boards to issue NPDES permits, subject to specified conditions and requirements, pursuant to CWA § 402, 33 U.S.C. § 1342.

17. LAS GALLINAS is not in possession of an NPDES Permit authorizing it to discharge pollutants as detailed in this Complaint into navigable waters of the United States within the meaning of the CWA.

18. The Code of Federal Regulations Title 40 Section 122.41 (40 CFR § 122.41) includes conditions or provisions that apply to all NPDES permits. Additional provisions applicable to NPDES permits are found in 4 CFR § 122.42.  LAS GALLINAS must comply with all of the provisions. Pursuant to 40 CFR § 122.41 any permit non-compliance constitutes a violation of the CWA.

## VI. VIOLATIONS

19. LAS GALLINAS' violations of effluent limitations and monitoring requirements and unpermitted discharges of untreated sewage from its sewage collection system as detailed herein and in the Notice are violations of CWA § 301(a), 33 U.S.C. § 1311(a).  The violations are established in RWQCB files for LAS GALLINAS' sewage collection system as well as in studies conducted by LAS GALLINAS in compliance with orders from regulatory agencies.

20. The enumerated violations are detailed in the Notice, incorporated herein by reference, and below, designating the section of the CWA violated by the described activity.

**VII.   CLAIM FOR RELIEF**

**Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. § 1365(a)(1)(B) - Violating the Terms of LAS GALLINAS NPDES Permit Nos. CA0037851 and CA0038873**

21. RIVER WATCH re-alleges and incorporates by reference the allegations of Paragraphs 1 through 20, including EXHIBIT A, as though fully set forth herein.

22. LAS GALLINAS has violated and continues to violate the CWA as evidenced by self-reported violations of the terms of its NPDES Permit Nos. CA0037851 and CA0038873.

23. LAS GALLINAS has self-reported and certified under oath as to SSOs reaching a water of the United States, as evidenced in CIWQS and its own records. As listed in CIWQS, the event ID number of those violations are identified herein and in the Notice. As detailed herein and in the Notice, LAS GALLINAS has self-reported and certified under oath exceedances of the effluent limitations in NPDES Permit No. CA0037851. As detailed herein and in the Notice LAS GALLINAS failed to provide any evidence that is in compliance with receiving water limitations in NPDES Permit No. CA0037851.

24. Each violation of NPDES Permit Nos. CA0037851 and CA0038873 is a separate violation of the Act. Each day a violation continues is a separate violation of the Act.

25. The violations of LAS GALLINAS as set forth above are ongoing and will continue after the filing of this Complaint. RIVER WATCH alleges herein all violations which may have occurred or will occur prior to trial, but for which data may not have been available or submitted or apparent from the face of the reports or data submitted by LAS GALLINAS to the RWQCB. Each of LAS GALLINAS' violations is a separate violation of the CWA.

26. RIVER WATCH avers and believes, and on such belief alleges, that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, LAS GALLINAS will continue to violate the CWA as well as State and Federal standards with respect to the enumerated discharges and releases. RIVER WATCH avers and believes, and on such belief alleges, that the relief requested in this Complaint will redress the injury to RIVER WATCH's members, prevent future injury, and protect the interests of RIVER WATCH's members which are or

may be adversely affected by LAS GALLINAS' violations of the CWA, as well as other State and Federal standards.

**VIII.   RELIEF REQUESTED**

WHEREFORE, RIVER WATCH prays that the Court grant the following relief:

27.   Declare LAS GALLINAS to have violated and to be in violation of the CWA.

28.   Issue an injunction ordering LAS GALLINAS to immediately operate its sewage treatment facility and collection system in compliance with the CWA, and implement the following injunctive actions:

    a.   Complete a Full Condition Assessment;

    b.   Implement a more environmentally protective Collection System Repair Program;

    c.   Establish a more environmentally protective Sewer System Overflow Response Program;

    d.   Provide Chemical Root Control Procedures;

    e.   Comply with CDC and Marin County Infectious Vector Protocols;

    f.   Update the Sewer System Management Plan;

    g.   Report Collection System Inundation;

    h.   Comply with NPDES Permit Effluent Limitation; and,

    i.   Maintain Training Program.

29.   Order LAS GALLINAS to pay civil penalties not excluded under CWA § 309(g), 33 U.S.C. § 1319(g), or in lieu of penalties, fund a Supplemental Environmental Project (SEP).

30.   Order LAS GALLINAS to pay the reasonable attorneys' fees and costs of RIVER WATCH (including expert witness fees), as provided by CWA § 505(d), 33 U.S.C. § 1365(d).

31.   For such other and further relief as the court deems just and proper.

DATED: August 22, 2022               LAW OFFICE OF JACK SILVER

                                                By:   */s/ Jack Silver*
                                                       Jack Silver
                                                       Attorneys for Plaintiff
                                                       CALIFORNIA RIVER WATCH

| | | |
|---|---|---|
| 1 | DATED: August 22, 2022 | LAW OFFICE OF DAVID J. WEINSOFF |
| 2 | | |
| 3 | | By: */s/ David J. Weinsoff*<br>David J. Weinsoff<br>Attorneys for Plaintiff<br>CALIFORNIA RIVER WATCH |